**In re COOK.**

No. 6926.

District Court, D. Maryland.

Jan. 28, 1935.

O. Bowie Duckett, Jr., of Baltimore, Md., for Armour Fertilizer Works.

Sherman P. Bowers, of Frederick, Md., for trustee.

WILLIAM C. COLEMAN, District Judge.

This case is before the court on the petition of the Armour Fertilizer Works to review the findings and order of the referee in bankruptcy dismissing the petitioner's claim, which arose in the following manner: On September 18, 1931, the Armour Fertilizer Works sold and delivered to Raymond F. Cook, the bankrupt, fertilizer to be used on the farm tenanted by the bankrupt. As security for payment of the purchase price, the bankrupt gave to the petitioner a bill of sale of "one-half of his wheat crop then being, standing and growing or to be planted during the year 1931," upon the

farm. This bill of sale was recorded on October 2, 1931, in full compliance with the recording statute of Maryland (Code Pub. Gen. Laws 1924, art. 21, § 48). Prior thereto, but subsequent to giving the bill of sale, the bankrupt had placed the fertilizer purchased by the bill of sale, and had planted the wheat, on the specified premises. On June 24, 1932, he was adjudicated a bankrupt, and a receiver was appointed for his estate. Shortly before the adjudication, the sheriff of Frederick county levied execution upon all of the personal property belonging to Cook, and the same was later advertised for public sale and sold, not including, however, the wheat crop which was not ready for harvest until about July 1, 1932; that is, subsequent to the adjudication of Cook in bankruptcy. The trustee in bankruptcy harvested the crop, sold it, and obtained $137.02 for Cook's one-half interest covered by the bill of sale, which amount is in excess of the sum due the petitioner, the Armour Fertilizer Works, on account of the fertilizer. Petitioner claimed that it was entitled to be paid in full out of the proceeds of the sale by the trustee in bankruptcy, as a preferred creditor, the purchase price of the fertilizer, with interest. The trustee resisted this payment; the matter was referred to the referee in bankruptcy, who conducted a hearing and decided in favor of the trustee, with the result that the petitioner has now brought the matter before this court for a review of the referee's action.

Briefly stated, the referee's conclusion, rendered in a carefully prepared opinion, is that, according to the law of Maryland, by which the rights, if any, acquired by petitioner under the bill of sale are to be determined, future crops cannot be made the subject of a bill of sale so as to vest any rights in the vendee thereunder.

In reaching his conclusion, the referee relies upon various decisions of the Court of Appeals of Maryland, but none of these cases appears to have actually involved the question of future crops. In one of them which the referee particularly stresses, Wilson v. Wilson, 37 Md. 1, 11 Am. St. Rep. 518, decided in 1872, the court merely held in an action of trespass and trover that a verbal agreement to sell and convey all the personal property that the vendor then had, and all that might thereafter be acquired, was inoperative to pass legal title to the subsequently acquired property. An examination of that case discloses that future crops were not the subject at least of direct inquiry, but the court was concerned with the question of whether legal title can be conveyed in goods subsequently to be acquired, and therefore whether a right of action to recover them from a party seizing them can be acquired by one to whom they have been sold or mortgaged. The court answered these questions in the negative, relying upon the case of Hamilton v. Rogers, 8 Md. 301, decided in 1855. But the court in Wilson v. Wilson clearly indicated that it was not dealing with the question of a possible equitable lien, saying (page 11 of 37 Md.): "How a Court of Equity would deal with a clause of this character in a mortgage or bill of sale, is not a matter now to be determined. * * *" Similarly, a few years later (1877) in Butler v. Rahm, 46 Md. 541, at page 548, in a case involving a railroad mortgage, the court said: "While it is well settled that a party cannot convey subsequently to be acquired goods, so as to give the mortgagee a legal title thereto, or a legal right of action against a party seizing them, as was decided in Hamilton & Robinson v. Rogers, 8 Md. 301, yet it has frequently been decided that such a conveyance creates in equity a valid lien upon property subsequently acquired." See, also, First National Bank v. Lindenstruth, 79 Md. 136, 28 A. 807, 47 Am. St. Rep. 366; Baltimore Humane Impartial Society and Aged Women's and Aged Men's Homes v. Pierce, 99 Md. 352, at page 355, 58 A. 26.

The referee in his opinion in the present case purports to quote the following passage from Wilson v. Wilson: "It is conceded the future crops do not pass by bill of sale without the vendee taking them in possession. If the authority given in the bill of sale had not been executed (by taking possession before the execution) it would have been of no avail against the execution. It gave no legal title or even equitable title to any special goods until possession of the growing crops was taken by the vendee." This quotation is not only an inaccurate transcription from the opinion in Wilson v. Wilson, but an examination of that opinion will readily disclose that Justice Miller, in using language similar to the aforegoing, was quoting from the decision in the English case of Congreve v. Evetts, 10 Excheq. Rep. 298.

The referee also relies largely upon the decision of the Circuit Court of Appeals for this circuit in Grimes v. Clark, 234 F.

604, rendered in 1916, affirming a decision of Judge Rose in the Maryland district (232 F. 190), to the effect that a chattel mortgage duly recorded covering a stock of goods, which expressly extended the mortgage lien to after-acquired property, did not authorize the mortgagee shortly before the mortgagor was adjudicated a bankrupt to seize the after-acquired property. After a review of the Maryland authorities, the Circuit Court of Appeals said (page 607 of 234 F.): "In view of these decisions, which disclose a clear and long-established rule of law, it must be held that the mortgage in question was ineffectual and void as to property bought by Baker after the mortgage was executed, which is the property now in dispute. As to that property the mortgage gave Grimes neither lien nor right of possession. It was simply a nullity; in contemplation of law it never existed. Grimes, therefore, had no more right to take this property, with or without the assent of Baker, than had any other creditor; and it follows necessarily, under the admitted facts, that the transaction by which he got it was an illegal preference which the trustee in bankruptcy can set aside." We do not, however, consider that this decision is conclusive of the precise point here at issue any more than are the Maryland decisions above referred to, most of which are also referred to by both the lower and the appellate court in Grimes v. Clark, because in Grimes v. Clark future crops were not in issue, but stock in trade. In short, we do not find any decision of the Circuit Court of Appeals for this circuit or of the Court of Appeals of Maryland, or of this court, which purports to classify future crops with after-acquired property which, unlike future crops, is not the natural product or the expected increase of something already belonging to the vendor or the mortgagor. On the contrary, we believe that this distinction is intended to be made in the case of Ober v. Keating, 77 Md. 100, 26 A. 501, a case not referred to in the opinion of either the lower or the appellate court in Grimes v. Clark, nor in the referee's opinion in the present case, nor in any of the decisions upon which he relies, nor by counsel before this court.

In Ober v. Keating it was directly held that the mortgagee under an unrecorded mortgage covering a "wheat crop then about to be seeded on the farm" tenanted by the mortgagor had an equitable lien in the crops when grown, as between him and the mortgagor and the assignee for the benefit of the creditors of the mortgagor. The court said (page 103 of 77 Md., 26 A. 501, 502): "The mortgage by Powell to the appellants was valid and binding, as to the transfer of his interest in the wheat crop, against him; but, not being recorded, it could not operate to the prejudice of the parties claiming under a second mortgage, which was duly recorded." The principle would seem to be the same where an equitable lien is created by a promise to execute a mortgage or by a defectively executed or unrecorded mortgage, and so it has been held in Maryland in Goldsborough v. Tinsley, 138 Md. 411, 113 A. 861, and Union Trust Co. v. Biggs, 153 Md. 50, 137 A. 509.

Ober v. Keating appears not to have been cited in any reported opinions of the Court of Appeals of Maryland except in Barron v. Whiteside, 89 Md. 448, 43 A. 825, and in Goldsborough v. Tinsley, supra. In the former, it is cited with apparent approval, but Barron v. Whiteside did not involve a question of future crops. In Goldsborough v. Tinsley, where it was held that a chattel mortgage on cattle, though lacking the affidavit as to the bona fides of the consideration required by statute and not recorded, is in effect an equitable lien upon the property therein named, Ober v. Keating is cited in support of the following statement by the court (page 419 of 138 Md., 113 A. 861, 863): "While an equitable mortgage or lien, such as the one before us in this case, is not valid and enforceable against a bona fide purchaser or mortgagee for value without notice, * * * yet it is enforceable not only against the mortgagor himself, but also against parties who claim under him as volunteers, or without an equity superior to that of the creditor holding the lien."

This doctrine of potential possession has received frequent recognition in various other jurisdictions, with the result that in most states where the question has arisen it has been held that the owner of land may mortgage a future crop. See Williston on Sales, vol. 1 (2d Ed.) § 135, pages 258, 259. To the same effect is the decision in Briggs v. U. S., 143 U. S. 346, 12 S. Ct. 391, 36 L. Ed. 180, involving future crops in the state of Mississippi, where, however, no statute was applicable but the common-law rule was applied.

In view of the decision of the Maryland Court of Appeals in Ober v. Keating, supra, we believe that the referee's conclusion as to the law of Maryland with respect to the sale of future crops is erroneous. The fact that the court rendered its decision with such finality, and without citation of its decisions which had previously indicated the recognition of equitable liens in favor of vendees and mortgagees as to property after acquired by sellers and mortgagors is, we think, additional indication that the court entertained no doubt as to what it believed had always been the rule in Maryland as to future crops. However, the bill of sale in the present case could not become operative as against creditors of the bankrupt, and therefore not against his trustee in bankruptcy, except as to creditors (1) who existed prior to the execution of the bill of sale, and (2) who became such after it was recorded. See In re Sachs (D. C.) 21 F.(2d) 984; Id. (C. C. A.) 30 F.(2d) 510; In re Rosen (D. C.) 23 F.(2d) 687; In re Shipley (D. C.) 24 F.(2d) 991; In re Rainey (D. C.) 31 F.(2d) 197; Roberts & Co. v. Robinson, 141 Md. 37, 118 A. 198; Gunby v. Motor Truck Corporation, 156 Md. 19, 142 A. 596.

Since neither the record in the case nor the opinion of the referee discloses whether there were in fact any creditors of the bankrupt who became such subsequently to the making of the bill of sale but prior to its recordation, it follows that the case must be remanded to the referee for a specific determination of this question. If such creditors are found to exist, then the trustee in bankruptcy will prevail over the petitioner-vendee, Armour Fertilizer Works, and thereupon all creditors of the bankrupt will share equally in any distribution resulting from the trustee's priority as aforesaid, regardless of when they became creditors. In re Sachs, supra.

Since we rest our decision squarely upon our interpretation of the decisions of the Maryland Court of Appeals, it becomes unnecessary to consider the effect of section 26, paragraph 3, of article 83, of the Maryland Code, which is part of the Uniform Sales Act, providing: "Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods," and which the petitioner has also advanced in support of its claim for priority.

An order will be signed in accordance with this opinion.